Let's let everybody get settled, we have plenty of time. Okay, Mr. Stanley. Thank you, Your Honor. Good morning. Rick Stanley here for the Entergy Appellants. I will address two primary issues this morning. First I will address why this court has appellate jurisdiction over this matter, and then second I will address whether state tort claims can be used to regulate the interstate electric transmission grid or whether such claims necessarily present federal questions. First as to appellate jurisdiction, this court does have jurisdiction over this appeal under 28 U.S.C. 1291. A well-recognized exception to the rule against appealing remand orders is a remand order based on abstention, that's this court's decision in Wallace, and that would include the abstention provisions of CAFA, and that's this court's decision in Watson, 2016. For that reason, 1447D does not preclude review of the remand decision based on abstention. The prior panel decision in the CAFA appeal, which I think Judge Haynes was on that panel, acted only under 1453, and in that appeal did not reach the other two bases of the remand order. So, in the CAFA appeal, only CAFA was decided, not the other . . . But CAFA's gone, so this argument about abstention on CAFA is gone. Well, the question is, on the merits I agree, CAFA, we're not going to argue CAFA jurisdiction here, that's been decided, that's the law of the case, but the question is, at the time the 1291 appeal was filed, was there jurisdiction over the entire order? And we believe there was, under 1291, because even, I think, similar to the BP case, where 1453 provided the exception to 1447, the court ultimately determined that the federal officer jurisdiction was not present, but the Supreme Court remanded and said, consider the whole order.  Beg your pardon? And that opens the door to the other two, and we said no. So I know you don't agree with that ruling, but it's a law of the case and a precedential opinion that's rule of orderliness. I understand, Your Honor, but my suggestion is solely that in . . . the court, as I understand the panel's decision, decided that 1453 did not fit under the BP whole order doctrine. So in the connection with that expedited appeal, the court did not need to reach the federal question issue or the bankruptcy issue. The court did not preclude alternative jurisdiction under 1291, and other circuits, including a circuit in Kitchen and the 10th circuit, I mean, sorry, the 11th circuit in Hunter, have recognized that 1291 is available as an alternative to take a remand order up. It sounds to me as though what you're saying is for purposes of addressing our appellate jurisdiction now, and only for purposes of that and not the merits. That's correct. That we should just ignore the fact that there was a prior appeal, that the fact of that prior appeal has nothing to do with our jurisdiction now. But I'm only . . . no, Judge, I'm suggesting that the fact that that prior panel rendered a decision on the merits, on CAFA, does not rob this court of jurisdiction over these issues any more than in BP, the determination that the federal question was not a removable ground precluded the 3rd circuit from hearing the other remand issues. And so I think that the BP . . . I mean, but the problem you have is federal question jurisdiction, when the district court demands on that, we don't have jurisdiction over that except in those little tiny exceptions that you're not arguing here. So you are arguing that CAFA gives us that, and we already ruled on that. So the question is just straight up, do we have jurisdiction to decide if the district court erroneously remanded federal question in bankruptcy? That's what we have, okay? And what . . . and other than this abstention on bankruptcy, do you have any basis to argue that? I still think, Your Honor, that under the 1291 . . . we appealed, granted, under two different statutes, because we weren't sure, and there was no precedent in the circuit as to whether the 1453 would allow appeal of the whole order, or whether 1291 was the proper way of going. So, had we not appealed under 1453, I don't think there's any question that this court could consider all three grounds of the remand order. Right, but we already dealt with CAFA. You've agreed with that, admitted that, and I don't think there's much to admit. It's out there on the internet. So that ruling is already out there. So I'm struggling with, what is it that you're trying to contend we can do? I mean, yes, okay, 1291 is always what we sort of look at when there's a final order we're supposed to look at. That's true in any normal case, a district court remanded because it found there wasn't a federal question, and you appeal and say, yes, there was. We don't have jurisdiction over that, except, as I said, in those little, tiny exceptions. So I'm still struggling with, respectfully, why we're here. I suppose I would put it to you this way, Judge. Had we not filed the 1453 expedited appeal, and this case came up purely under 1291, I think we would all agree that under Quackenbush, there would be a jurisdictional hook for this court to consider not only CAFA, but the whole order, both the bankruptcy and the federal question. Now, the difference is, in this case, we did appeal under 1453 and 1291, and did the fact that we took that tact rob this court under 1291 of its jurisdiction to hear the whole order. If your honors had decided, again, hypothetically, that we took it up only under 1291, that CAFA did not lie, and that that was correct, you're out under CAFA, you still would have been able to consider federal question. You still would have been able to consider bankruptcy. It's only the fact that we went on this two-track system that arguably takes away the ability of this court to have appellate jurisdiction, and I admit, I don't have a case directly on point where your honors have done this, but I would say it's close to the Kitchen case from the Eighth Circuit, where that court denied the discretionary appeal under 1453, and then reached the case under 1291, and said, we could have done it under 1453, but we're going to proceed under 1291. So this does present a very complicated jurisdictional question. I don't think your honors have dealt with this before, and I have not been able to find any case in the circuit on point, and I do recognize that I'm fighting uphill because of the prior panel opinion, but I do believe this court would have had unquestionably had jurisdiction under Quackenbush had we just proceeded under 1291, and I don't think the case under 1453 robs the court of that power. So that is my position on jurisdiction, at least appellate jurisdiction. I'll proceed now to the second point, why the court should reach the federal question issue in this appeal. Obviously, I'm not going to talk about capital, but the question here is that the fact that this complaint asserts at least two claims that necessarily present federal questions. The first is the system redundancy of transmission. In paragraph 56 of the complaint, it directly alleges that Entergy has an inadequate redundancy system for transmission to prevent one failure from causing a system failure. That directly implicates the NERC standard of what is called N-1, the idea that the system of transmission, which is 30 states in the eastern transmission grid, it has to be able to suffer the loss of its major primary element and keep running. That is a federal standard. That is a NERC standard. This complaint says you need to do more than that, even in the context of a hurricane. So necessarily, just as in Tennessee Gas Pipeline, we have a state court complaint necessarily borrowing the federal duty, but not stated as a federal complaint, stated as a state law complaint. And Judge Owen in Tennessee Gas Pipeline said, in that instance, if you meet the four-factor test of Tennessee Gas Pipeline, you have federal question jurisdiction. The second complaint is that Entergy chose not to fund placing transmission cables underground, instead choosing to have them above ground. This directly implicates a second federal standard under MISO, which is the Mid-Continent Independent System Operator, which is a nonprofit independent organization that runs transmission construction and operation in 15 states. And it literally requires, under FERC Order 1000, and then MISO tariff, which is federal law, before we build transmission, we have to go through a planning process with MISO. MISO then has to approve it, then you can construct it. The allegation in the complaint that we chose willy-nilly to choose corporate profits over placing transmission underground is not correct, but necessarily, again, implicates a federal standard, and you have to look to the MISO tariff in order to evaluate that claim. Third, there is no Louisiana law here that supplies the relevant standard of care for either of these claims. Louisiana does not purport to regulate the redundancy of an electric transmission system on the Eastern Interconnected Grid. Louisiana does not purport to regulate how to plan and construct underground transmission. That's MISO. So there is no state standard here, and it's very, again, very similar to Tennessee Gas Pipeline, in that here, the only source of the standard is a federal standard. As Judge Owen wrote, the duty would have to be drawn from federal law. That's a quote. Now, this case meets all four of the Tennessee Gas Pipeline standards. First, for the reasons just stated, it will be necessary to apply federal law to adjudicate and assess those two claims for relief. Second, the claim, the federal issues are actually disputed in two ways. First, we certainly dispute that we breached the NERC N-1 standard, and we dispute that, frankly, there is any tort liability created by the NERC standard or by the MISO standard. Can we be hauled before FERC and fined if we did something wrong? Absolutely. Has it happened? Yes. We cited cases in our brief where utilities have been cited for not meeting these federal standards. Do they support a private tort right of action in state court? They do not. So we dispute that. The federal issues are substantial. As Tennessee Gas Pipeline said, these need to be issues that affect an entire industry, not just one defendant. In this case, we're talking about the Eastern Interconnect grid. For instance, on MISO alone, you have a plethora of transmission owners who are operated by MISO, the Mid-Continent Independent System Operator. So you're talking a whole host of companies that are going to be affected by some kind of order in state court to build new transmission and connect it to the MISO grid. So, fourth, will this have any major effect on federal judicial state responsibilities? Absolutely not. We're not arguing that contact cases can be removed to federal court. This is a transmission case, which affects the interconnected 30-state grid for the Eastern United States and part of Canada. This is the kind of case that presents a purely federal issue and is very similar to Tennessee Gas Pipeline. I would also argue to the court that Simmons supports the result as well. In Simmons, this court recognized that state court tort systems can serve the same effect as state regulations. There are, in effect, attempts by states to regulate federal issues. And in that case, the court said, not only they didn't even actually deal with the remand issue, they dismissed the case at the court of appeals level on the grounds of conflict preemption. I'll conclude my opening remarks with, there's a lot in my opponent's brief about the failure of one transmission tower and how maybe that tower wasn't built properly. Even if that is so, the fact that we have other claims that present federal questions under Tennessee Gas Pipeline is enough to support removal. Thank you, Your Honor. Mr. Stanley, you've saved time for rebuttal. Ms. Brustewich? Good morning. May it please the court, I'm Celeste Brustewich on behalf of the appellees and actually we're the movers in our motion to dismiss for lack of jurisdiction, res judicata, and law of the case. I'm very tempted after hearing the concessions of my opponent, my able opponent here, and the pointed questions of the panel, not to talk about jurisdiction, but it's important that we do so because there's no question that we don't belong here today, this group of people that are with me, we don't belong here. Before I do that though, I want to tell you that the decision to take two appeals when only one appeal is allowed under the federal rules, not two appeals from one order as was done here, has caused tremendous waste, not only in my office, my staff, everybody doing two briefs. That has nothing to do with our decision on whether we have appellate jurisdiction. Very well, Judge. So don't try to prejudice our decision by throwing out that kind of information about how tough it's been on you because that is unhelpful. Do you acknowledge that Energy could have taken an appeal under both 1291 and 1253 as one appeal? Under 1453, the appeal that they took, it's an interlocutory discretionary appeal that they got. It's under that 1453 that they're grabbing on to this abstention hook, but let's look at what Judge Fallin found and what the other panel found. So the answer to my question is no, they could not have? That's correct, Your Honor, because the order itself, the order and reasons issued by Judge Fallin were not a final judgment on the merits. They were a judge in remanding an order, remanding a case to state court that under the barrow circumstances of CAFA being involved, had the ability to go under 1453 and get an appeal. I was in the Kitchen case. That was my case. Well, I mean, if there was an exception to the rule that you can't appeal the determination of no subject matter jurisdiction, then they could come up to us. That's the issue to me that we have here. CAFA's gone and any abstention of CAFA and all of that, that is gone for better or worse. Gone. But if they have any claim that we have jurisdiction over this federal question in bankruptcy remand, then we can consider that. So that's the jurisdictional question that I think we are facing. I understand. If CAFA wasn't even in this case, we would have to look at, because people do sometimes appeal that stuff and we have jurisdiction to decide our jurisdiction. So to me, that's where we are here. So what is your answer to that? My answer is that your jurisdiction was already decided by the prior panel and that it's totally inappropriate and improper for two panels of this court to render decisions on whether jurisdiction exists or does not exist. We didn't in that panel decide whether there's some exception to the federal question slash bankruptcy point. So here is where we are on that, rightly or wrongly. What is your answer to whether we have jurisdiction over that? My answer is, is it that a 1291 appeal had been taken on both issues, CAFA would have been resolved the way it was, and they would have concluded we do not have jurisdiction to resolve the rest of the issues that Judge Fallin decided, because 1447D prohibited. Okay. And there's nothing in case . . . And you think that's still true? That's your point? Absolutely still true. But I want to say one thing about abstention, because it's important, and I understand from Quackenbush and all those . . . Joseph . . . Cone Hospital . . . I'm sorry, I can't remember the name. Abstention is the basic principle that the district court had jurisdiction, but for some other reason, we're not going to hear the case, okay? If you look at the actual result that we got in CAFA . . . and so CAFA is a statute that says, this is what applies to CAFA, and here's some exceptions. So if CAFA applies, you have jurisdiction, and then you have exceptions. But if you look at the exceptions that we proved, we proved that there would be absolutely no diversity, meaning that we proved that CAFA didn't apply in the first place. So there is not an abstention argument. There is no hook for jurisdiction in this case at all. Okay. Well, I'm not going to contend that I would rule this way, but let's get to . . . he made an argument on sort of what I'd call the merits of the federal question point. If we somehow get there, what do you say? Well, I do want to say that, but I guess the other thing that . . . I just . . . I can't leave this, because it's wrong. We're here incorrectly. Is that . . . Okay. Well, the reality is, as a lawyer, sometimes your place is you'd rather not be, but here we are.  Okay. Let's talk about . . . Y'all both requested oral argument. Right. Let's talk about . . . So here we are. I don't know why you did, but you did, so here we are. The FERC and the federal system for federal power is something that started maybe a hundred years ago. It started based on state utilities. There's no question in my mind that someday federal law will control all of the federal . . . all of the electric systems all over the country, but right now it doesn't. It only controls it, in the case that they cited Simmons, is when it involves a hydroelectric dam. Here is what FERC says on its website. It's in the record. Our . . . once electricity projects become operational, safety is regulated, monitored, and enforced by the state in which the project resides, with the exception of hydropower plants, for which FERC retains jurisdiction when they are operational. Yeah, maybe someday it'll be a federal system, but it's not right now. Our suit is completely based on state law. Last week, my opponents filed a supplemental letter with the court advising you of a new case called Next Era. First of all, Next Era goes in great detail discussing the complexity of the utility system that we have in this country. It's complex. Just listening to counsel for a few minutes will give you that flavor, but the case itself involved whether a Texas statute violated the Commerce Clause. It wasn't a tort case against a utility. It was a utility that was challenging the constitutionality of the Texas statute. In the concurring opinion, and this is why I think the case is relevant, and if you're inclined to read the case, the concurring opinion says, the regulation of utilities is one of the most important of the functions traditionally associated with the police power of the states, citing a 1983 United States Supreme Court decision, Arkansas Electric Co-op Company. Mr. Stanley just told us that there's no Louisiana law that provides the standard of care for this case. I'm just repeating what he told us. Is that right? I heard him, Judge. Unfortunately, Mr. Stanley is wrong on that, because his own company's plan, something that we pled, is not based on FERC. It's based on an association of electrical association, and it's based on Louisiana law. 2315, I don't think any of you are Louisiana lawyers, but the Civil Code Article 2315 is the foundation of all of our tort law here. If you were unreasonable in your conduct, and you caused damage to somebody, then you're liable to pay that damage, and that's what this case is all about. We're not asking them to rebuild the electrical grid, or do anything underground, or do all these things. We are seeking money damages for people who were out of power for an unnecessarily long period of time, because Entergy decided, with full knowledge, not to improve its situation here in the New Orleans area. That's simply what this case is about. We're not asking them to do anything. With respect to . . . FERC, as we said in our brief, this is not a hydroelectric dam case. This is a case primarily related to the tower falling down, but it's an institutional failure of systems that occurred in the greater New Orleans area, and that caused this prolonged blackout for which we're seeking damages under negligence. It's clear to me that FERC doesn't apply. All the cases they cited, they're very much distinguishable. Either they involve a dam, or like in the case of Next Era, it's a challenge. Your position is you win either way. You either win because we lack jurisdiction to decide the district court's jurisdiction, or because if we decided it, the district court was correct. That's correct. That's your argument. Absolutely correct. I guess, fundamentally, when they didn't get the result that they wanted from the first panel, shouldn't they have filed a petition for a rehearing or a rehearing en banc? Because the briefs that were filed in both cases are essentially identical, except for the cover sheet with the number. They're identical. So all the three issues that they have now were there with the first panel. So if they didn't file a motion for a rehearing or a rehearing en banc, is this panel going to come behind a panel that considered the same order and say, oh, you were wrong about that, so we're going to change that? I don't know how you can do that and have the system that we have of the proper method of reviewing decisions along the way. It would seem unseemly to me to do it. Okay. Well, they're not claiming that we can undo the CAFA decision. No, but the first panel— It's all inconsistent, but they're not saying that we are to overrule the prior panel or something like that. Well, you would have to, because the prior panel said under CAFA, we choose not to answer those questions. And it said under 1447D, that's a mandatory statute. We don't have jurisdiction to hear these claims. And now they're here telling you this is a final judgment because of some abstention thing that doesn't exist. And despite 1447D, you can decide something that nobody else can decide, whether federal question jurisdiction applies in a case involving a utility. That's not a civil rights case. That's not a government employee case. That's not a CAFA case. It's a whole bunch more specific little things that you can appeal on a remand decision. But this case isn't one of them. So you're really in a very odd position to be asked to do something that the prior panel said we're not going to do it. And not only are we not going to do it, we're not going to do it because we don't have jurisdiction to do it. Those are all my comments. I'm happy to answer any questions. I don't want to repeat myself. All right. Thank you. We'll hear a rebuttal from Mr. Stanley. Thank you, Your Honor. Your Honor, briefly on rebuttal, sort of in reverse order. First on the federal question issue, my opponent said, look, our claim is only a tort claim for an outage. It really doesn't involve these federal questions. I beg to differ. Paragraph 11 of their complaint, paragraph 56 of their complaint, in the relief section of their complaint, they directly allege it is the failure of the transmission system and Entergy's failure to ensure redundancy in the transmission system and its failure to invest in underground cables. Indeed, in this case, there is a request for an injunction to order us to bury our transmission cables. Those are claims. Now, at the end of the day, they may have damages for an outage, but those are claims that state federal questions because they have to under NERC and under MISO. You can't address those. Louisiana Civil Code 2315 is the general negligence standard from the Napoleonic Code. It doesn't address redundancy in transmission. It doesn't address the cost and feasibility and prudence of burying cables that are going to affect 17 other states. Indeed, this case, there's a case we cited in our brief called Dinka versus, I'm not sure who the defendants were, but that's D-E-N-K-A, where again, the plaintiffs argued that 2315 was sufficient to supply a standard of care in a toxic tort case. This circuit, it was very recent, held, no, it's not. This is much more complicated to look at the EPA regs and things like that. So they rejected this 2315 argument that a general negligence standard is enough. One other comment, my opponent said that the only time you've gone the other way in this kind of case is in the hydroelectric area under Simmons. That's not so. The Tennessee Gas Pipeline case is not a hydroelectric case. It was a suit against a whole lot of oil companies for their dredging to put pipelines in in southwest Louisiana. And the public entities sued the pipelines, saying under purely state law claims, under negligence and nuisance and things like that, and this court said, we have to look behind the state law claims. The only way to look at this is to say that what they're really asserting, you have to have a federal standard of care. And Tennessee Gas Pipeline recognized, and I admit, this is an extremely narrow jurisdictional footing, but it exists, and it exists particularly for this kind of case. So that, let me conclude with the last thing, which is the biggest thing, which is appellate jurisdiction to even reach that issue. Do you have it or do you not? The 1453 appeal that we filed before is discretionary, it's limited, it's expedited, and the court can decide whether or not to grant it. The 1291 is the general appeal statute. And there's no question that under 1291, had we just filed that appeal, this court could have reached all the issues in Judge Fallin's order, not just the question, but the order. That's the BP case. So the question is, did we lose that somehow by asking the court to hear 1453? This court hasn't reached that issue. I'm aware of no decision where you've decided that just going for 1453 cuts off your rights under 1291. And I'm urging the court not to reach that decision. 1453, as the panel in that case recognized, is specialized. It requires this court to turn its attention away from other matters. And the court said, we're not going to look at the whole order. And however, under 1291, you can. And that's why I'm asking the court to do, unless you have any questions, that's all I have. Thank you, Your Honor. Thank you, Mr. Stanley. Your case and all of today's cases are under submission, and the court is in recess.